Marvin E. WILLARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 099–85.

Court of Criminal Appeals of Texas, En Banc.

Nov. 19, 1986.

Kenneth E. Houp, Jr., on appeal only, Austin, for appellant.

Travis B. Bryan, III, Sp. Prosecutor, Bryan, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder. The jury assessed his punishment at 30 years' imprisonment and at a fine of $10,000.00.

On appeal the appellant, in one of his points of error, contended the trial court erred, over his objection, in allowing his wife to testify for the State. Perceiving a conflict between *Garcia v. State*, 573 S.W.2d 12 (Tex.Cr.App.1978), and *Young v. State*, 603 S.W.2d 851 (Tex.Cr.App.1980), the Court of Appeals felt the conflict between the cases were for the Court of Criminal Appeals, but concluded that nothing in *Young* would compel the court to discard the "standard" in *Garcia*. The court held that the wife of the appellant was a competent witness for the State. The conviction was affirmed. *Willard v.*

*State*, 682 S.W.2d 686 (Tex.App.—Houston [1st Dist.] 1984, reh.den.).

We granted appellant's petition for discretionary review to determine the correctness of the Court of Appeals' opinion as to the competency of the wife as a witness.

It was undisputed that Jean Willard was appellant's wife at the time of the alleged offense and at the time of trial over a year later. Although a divorce proceeding had been instituted by Jean Willard prior to December 11, 1982 (date of alleged offense), it was still pending on December 12, 1983, the day the trial began. The appellant was charged with the murder of Lynn Pinyozy,[1] Jean Willard's adult, 37–year–old daughter by a previous marriage.

The record shows that on December 11, 1982, Jean Willard and her daughter, Lynn Pinyozy, went to appellant's farm home to remove some of Mrs. Willard's belongings from the residence.[2] Jean Willard testified that after arriving at the residence, appellant took a teakettle away from her, hit her and broke her glasses and hit her and Lynn with his fists, and they retreated to their vehicle in the yard. Upon appellant's pleas, they returned to the house, but appellant again attacked them and then got a gun and shot Lynn, who at the time was in the yard near her vehicle. Appellant then forced her (Jean Willard) to accompany him as he left the premises, telling her that he was going to kill her if she didn't go to Mexico with him. They got as far as New Braunfels, where they were joined by one of appellant's sons, and came to Austin, where she was released later that night.

The defense was self-defense, and there was some evidence by the State that appellant's relatives altered the crime scene to

---

1. The two-count indictment charged in pertinent part that appellant did, on or about December 11, 1982, "intentionally, intending to cause serious bodily injury to an individual, Lynn Pinyozy, commit an act clearly dangerous to human life, to wit: by shooting the said Lynn Pinyozy with a firearm, thereby causing the death of said Lynn Pinyozy," and that appellant did, on or about December 11, 1982, "intentionally and knowingly cause the death of an individual,

Lynn Pinyozy, by shooting her with a firearm." It is observed that appellant's wife was not named in the indictment.

2. The divorce suit had been filed after the separation in October 1982. It appears that both appellant and his wife were under restraining orders.

make it appear that appellant had acted in self-defense.

Jean Willard's testimony was given over objection that she was his wife and disqualified as a witness for the State. See Article 38.11, V.A.C.C.P. We review some of the forerunners of said statute.

Article 794 [774], C.C.P. (1911), provided:

"Neither husband nor wife shall, in any case, testify as to communications made one to the other, while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsisted except in a case where one or the other is prosecuted for an offense; and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial."

Article 795 [775], C.C.P. (1911), provided:

"The husband and wife may, in all criminal actions, be witnesses for each other, but they shall, in no case, testify against each other, except in a criminal prosecution for an offense committed by one against the other."

These provisions from the 1911 Code of Criminal Procedure followed almost word for word the provisions of the earlier Codes of Criminal Procedure. Cf. Clark, Criminal Laws of Texas (1881), p. 550.

As can be seen, one of the above statutes created a privilege, and the other created a disqualification. Article 794, supra, conferred on the spouse the privilege of excluding communications between the spouses. This was a mere privilege that had to be claimed to be effective. Article 795, supra, on the other hand, established an absolute disqualification, which did not have to be claimed by the defendant to be operative. The statute (Art. 795) simply excluded the adverse testimony of a defendant's spouse.

In the 1925 Code of Criminal Procedure the two former statutes were melded into one statute. See Article 714, V.A.C.C.P. (1925). There was no change other than

the phrase "while the marriage relation *subsisted*" found in said Article 794 was changed to "while the marriage relation *existed*" in the new statute, Article 714, supra. As was true under the former statutes, the privilege could be waived, the disqualification could not.

Under the 1925 Code as well as the former statutes, it was consistently held that the husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other. Branch's Ann.P.C. 2d ed., Vol. 1, § 171, p. 176. See also *Johnson v. State*, 28 Tex.App. 17, 11 S.W. 667 (1889); *Miller v. State*, 37 Tex.Cr.R. 575, 40 S.W. 313 (1897); *Vickers v. State*, 92 Tex.Cr.R. 182, 242 S.W. 1032 (1922); *Hilton v. State*, 149 Tex.Cr.R. 22, 191 S.W.2d 875 (1945); *Morris v. State*, 150 Tex.Cr.R. 58, 198 S.W.2d 901 (1946); Tex.Jur.3rd, Vol. 24, Crim. Law, § 3206, p. 561.

It has been held that a wife cannot be used as a witness against her husband, even if no objection is urged at the time, *Johnson v. State*, 148 S.W. 378 (Tex.Cr. App.1912), for the disqualification cannot be waived. *Eads v. State*, 170 S.W. 145 (Tex.Cr.App.1914). Even with his consent, the wife is an incompetent witness against the husband. *Rogers v. State*, 368 S.W.2d 772 (Tex.Cr.App.1963). If the State uses the wife of the accused as a witness against him on the trial of a case in which she is not a competent witness for the State, such action may require a reversal though objected to for the first time on appeal. *Brock v. State*, 44 Tex.Cr.R. 335, 71 S.W. 20 (1902); *Moore v. State*, 45 Tex. Cr.R. 234, 75 S.W. 497 (1903); *Davis v. State*, 45 Tex.Cr.R. 292, 77 S.W. 451 (1903); *Spivey v. State*, 45 Tex.Cr.R. 496, 77 S.W. 444 (1903); *Yeiral v. State*, 119 S.W. 848 (Tex.Cr.App.1909); *Woodall v. State*, 126 S.W. 591 (Tex.Cr.App. 1910); *Eads v. State*, supra.

In a fact situation much like that in the instant case it was held in *Johnson v. State*, 27 Tex.App. 135, 11 S.W. 34 (1889),

that a wife was incompetent, in view of the statute, to testify against her husband for aggravated assault upon her daughter, the defendant's stepdaughter.

The early cases made clear that in light of the statutes the husband or wife was not a competent witness to testify for the State *unless the prosecution be for an offense committed by one against the other.* *Johnson v. State,* 11 S.W. 34, supra; *Johnson v. State,* 148 S.W. 328 (Tex.Cr. App.1912); *Norwood v. State,* 192 S.W. 248 (Tex.Cr.App.1917).

And in *Baxter v. State,* 34 Tex.Cr.R. 516, 31 S.W. 394 (1895), it was held the statutory prohibition against a husband or wife testifying against each other except in a criminal prosecution for "an offense committed by one against the other" meant an offense involving "some act of personal violence against the other." See also *Overton v. State,* 43 Tex. 616 (1875). *Baxter* involved a criminal prosecution for slander against the wife. Thus, it is clear that for the husband or wife to be a competent witness for the State the husband or wife had to be the named victim in the indictment or information and the offense had to involve some act of personal violence against the named victim.

In 1965 the Code of Criminal Procedure was again revised [Acts 1965, 59th Leg., Chapt. 722 (S.B. 107), effective January 1, 1966]. Article 714, V.A.C.C.P. (1925), became Article 38.11, V.A.C.C.P. (1965).

Said Article 38.11, supra, provided:

"Neither husband nor wife shall, in any case, testify as to communications made by one to the other while married. Neither husband nor wife shall, in any case, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation existed except in a case where one or the other is on trial for an offense and a declaration or communication made by the wife to the husband or by the husband to the wife goes to extenuate or justify the offense. The husband and wife may, in all criminal actions, be witnesses for each other, but except as hereinafter provided, they shall in no case testify against each other in a criminal prosecution. However, a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or against any child of either under sixteen years of age, or in any case where either is charged with incest of a child of either, or in any case where either is charged with an offense defined in Chapter Three of the Penal Code of Texas pertaining to wife or child desertion or wilful failure or refusal to support his or her minor children."

As the Special Commentary (Onion) to the 1965 version of Article 38.11 makes clear, the changes wrought were to make either spouse a competent witness against the other in any case involving (a) any assault or violence committed against any child of either under 16 years of age, (b) any case where either is charged with incest of a child of either, and (c) offenses under Chapter 3 of the Penal Code pertaining to wife and child desertion or willful failure or refusal to support his or her minor child.

The first part of the statute creating the privilege as to confidential communication and the disqualification as to the adverse testimony of the spouse remained unchanged.

It is true, however, there was some change in the language. Article 714, V.A. C.C.P. (1925), provided in part that "... The husband and wife may, in all criminal actions, be witnesses for each other; but they shall in no case testify against each other except *in a criminal prosecution for an offense committed by one against the other.*" (Emphasis supplied.) The new Article 38.11 provided in part that the husband and wife "shall in no case testify against each other in a criminal prosecution," except as therein provided. The statute then provided "... However, a wife or husband may voluntarily testify against each other *in any case for an offense involving any grade of assault or vio-*

*lence committed by one against the other."* (Emphasis supplied.)

While there was a change in language, it appears the change was to write into the statute the interpretation given the former statutes. *Baxter v. State,* supra. A search of the various commentaries on the 1965 revision of the Code and some of the drafts of the State Bar's Committee on the Revision of the Code of Criminal Procedure did not indicate any alteration in the law was intended. And since the 1965 amendment the courts have not interpreted the language as having a different meaning than the former language.

In 1973 Article 38.11, supra, was amended [Acts 1973, 63rd Leg., p. 968, ch. 399, § 2(A), eff. Jan. 1, 1974]. In the second sentence the word "such" was deleted so the phrase "as to any such communication" was to read "as to any communication." The last sentence was changed to read "However, a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or against any child of 16 years of age, or in any case where either is charged with incest of a child of either, or in any case where either is charged with bigamy, or in any case where either is charged with interference with child custody, or in any case where either is charged with nonsupport of his or her spouse or minor child."

In this last sentence "16" was substituted for "sixteen" and the provisions as to bigamy, interference with child custody and nonsupport of spouse or minor child were substituted for "an offense defined in Chapter Three of the Penal Code...." found in the 1965 version.

Article 38.11, supra, as enacted in 1965 and as amended in 1973, like the preceding statutes, continued to provide a privilege that may be waived and a disqualification that is absolute. 3 L. Simkins, Texas Family Law with Forms, § 33.2 at 656–58 (Speer's 5th Ed. 1976).

Cases decided after the effective date of the 1965 Code of Criminal Procedure fol-lowed the cases decided under the former statutes. See, e.g., *Carabajal v. State,* 477 S.W.2d 640 (Tex.Cr.App.1972); *Johnigan v. State,* 482 S.W.2d 209 (Tex.Cr.App.1972); *Burns v. State,* 556 S.W.2d 270 (Tex.Cr. App.1977). See also *Wall v. State,* 417 S.W.2d 59 (Tex.Cr.App.1967); *Acker v. State,* 421 S.W.2d 398 (Tex.Cr.App.1967); *Shirley v. State,* 501 S.W.2d 635 (Tex.Cr. App.1973); *Ross v. State,* 629 S.W.2d 106 (Tex.App.—Dallas 1981).

*Garcia v. State,* 573 S.W.2d 12 (Tex.Cr. App.1978), was the case urged upon the trial court in the instant case by the prosecutor as the basis for the admission of the wife's testimony, and was the case that also misled the Court of Appeals.

In *Garcia* the defendant was charged with indecency with a child under V.T.C.A., Penal Code, § 21.11(a)(2) (1973). The indictment, set out in part in *Garcia,* charged the defendant with exposing his genitals to R____ G____, a child younger than 17 years, not his spouse, with intent to arouse and gratify his sexual desire. The indictment did not allege on its face that an act of assault or violence against the alleged victim of the charged offense was involved. The evidence showed that R____ G____ was the 13–year–old daughter of appellant and his wife, and that during the commission of the offense against R____ G____ that force was used against R____ G____ such as would constitute an assault. After the evidence established these facts, the defendant's wife and mother of R____ G____ was permitted to voluntarily testify for the State only under the "minor child" exception of Article 38.11, V.A.C.C.P. She was not shown to be the subject of an assault or act of violence by the defendant during the course of the alleged offense.

■ In explaining its position that the wife was a competent witness under the "minor child" exception and not disqualified under the terms of Article 38.11, supra, the panel in *Garcia* held that the question of whether an offense "involves" any grade of assault or violence does not depend upon the allegations in the charging

instrument but must be determined from the facts and circumstances in the particular case. Thus in *Garcia* the facts showed an assault upon the victim of the alleged offense during the course of such offense, and further showed she was the minor child of the defendant and his wife. These facts authorized the wife to voluntarily testify for the prosecution. *Garcia* did not hold that the wife is a competent witness in any offense against the defendant where she, although not the alleged victim in the charging instrument, is shown to have been subject to an act of assault or violence by the defendant during the course of the charging offense. To so read *Garcia* is to misinterpret it.

In *Young v. State*, 603 S.W.2d 851, 852–853 (Tex.Cr.App.1980) (Opinion on State's Motion for Rehearing), decided before the instant case was tried, clearly distinguished *Garcia* from the situation in *Young*.

In *Young* the defendant was charged with aggravated assault upon Tommy Gould, his brother-in-law. The evidence shows the defendant's wife left the company of her husband and got into her brother's Volkswagen with him and another man. As they drove away, the defendant followed in his LTD Ford automobile. He rammed the Volkswagen from the rear, and when it swung sideways, he drove his Ford into the Volkswagen broadside. The indictment alleged Tommy Gould as the victim of the aggravated assault and that he was injured. When the State called the defendant's wife as a witness for the prosecution, it was urged by the State she was injured in the collision, though not alleged in the indictment as the victim of the charged offense. She was permitted to testify. The conviction was reversed because the exception in the statute allowing one spouse to testify against the other "in any case for an offense involving any grade of assault or violence committed by one against the other" had no application where "the wife was not the injured party

in the case being tried." The last quoted phrase from the opinion is best understood as meaning that the wife was not the *alleged* victim of the prosecution, not that she was not injured in the collision.[3] As explained on rehearing, *Young* was "a case for an offense allegedly committed by appellant against Gould," not the wife. The exception in the statute sought to be utilized in *Young* was not available under the circumstances. A different exception to the statute was involved in *Garcia*. There is no conflict between *Garcia* and *Young*. Further, *Young* was decided in accord with cases before and after the enactment of Article 38.11, supra. *Young* is here controlling and calls for a reversal of the conviction.

*Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), does not affect this case. In *Trammel* the Supreme Court held that the common-law spousal privilege applied only to the *witness* spouse, who could not either be compelled to testify or be foreclosed from testifying. *Trammel* dealt with the judicial reevaluation of a court-made privilege, and did not deal with a special statute. In fact, in footnote # 9 (63 L.Ed.2d at 193), the Court noted that Texas was one of eight states that by statute makes one spouse incompetent to testify against the other.

■ There can be no argument that the trend in other jurisdictions has been to reform and modernize the husband-wife testimonial privilege. And on December 18, 1985, this Court promulgated the new Texas Rules of Criminal Evidence under its new rule-making authority [Acts 1985, 69th Leg., ch. 685, p. 5136 (H.B. # 13) ]. Such rules became effective September 1, 1986. Rule 504 thereof replaces Article 38.11, V.A.C.C.P., and makes it clear that one spouse may testify against the other. Nothing therein calls for a different result in the instant case. Article 38.11, V.A.C.C.P., was in effect at the time of appellant's trial and governed the admissibility

---

**3.** An examination of the *Young* record shows the wife got out of the Volkswagen, complained that her neck hurt, walked to the Sportsman Club from which her sister-in-law drove her to the hospital. There she testified she was given a "shot for her nerves" and released.

of evidence in his case. He was entitled to rely upon that statute. If it had been properly applied, there may have been no conviction and hence no appeal. As Justice Jack Smith noted in his dissenting opinion in the Court of Appeals, it seems grossly unjust, under the facts of this case, not to permit the appellant's wife to testify against him, but Article 38.11, supra, was the prerogative of the Legislature to enact and to add exceptions thereto.

In the event of retrial the wife may be permitted to testify under said Rule 504. This fact does not call for the affirmance of the instant conviction. If it were otherwise trial judges may be encouraged to disregard some current unpopular rules for the admissibility of evidence in the hope that any conviction might not be appealed or that before any appeal is disposed of the rules involved will be changed, and the conviction upheld since a retrial would be a useless thing.

The judgments of the Court of Appeals and the trial court are reversed and remanded to the trial court.

WHITE, Judge, dissenting.

The instant case involves an incident where the appellant violently assaulted both his wife and her adult daughter during the same course of conduct. The appellant beat both of the women before he attacked them with his gun, pistol-whipping his wife and shooting her daughter. Both the wife, who voluntarily testified against the appellant, and her daughter were direct victims of the appellant's violent and assaultive conduct.

In this fact situation, Art. 38.11 permitted the appellant's wife to testify against him concerning his violent, assaultive acts against her and the deceased. Ruling otherwise, the majority cites a line of cases from this Court which have interpreted Art. 38.11 differently, including *Young v. State*, supra, where this Court ruled that a spouse, in order to testify, must be named in the indictment or information as the victim of the other spouse's violent or assaultive acts. The history of Art. 38.11 suggests this has been, and is, an incorrect interpretation.

When the Legislature revised the husband-wife privilege in 1965, it dropped the language [1] which mandated that the witness spouse be alleged as the victim in an indictment or information. In the 1965 version of the statute, the Legislature replaced this language with a new, and broader, exception to the privilege against adverse spousal testimony. Art. 38.11, V.A.C.C.P., now states that "a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other."

The majority explains that various commentaries about the 1965 changes in the Code do not mention an alteration in the husband-wife privilege, and that the courts of this State have interpreted the new statute to have the same meaning as the old statute. If this had been the actual intent of the Legislature, they wouldn't have changed the language of the statute. Instead, the Legislature's decision to broaden the statutory exception to the husband-wife privilege reflects a dissatisfaction with the privilege and a desire to limit its application.

Since 1958, there has been a constant erosion of the scope of this privilege against adverse spousal testimony. Several state legislatures have accomplished this by statutory changes. *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), 100 S.Ct. at 911, footnote 9. Some authorities have called for elimination of the privilege against adverse spousal testimony where the testimony does not relate to confidential communications. Committee for Improvements in the Laws of Evidence of the American Bar Association, 63 American Bar Association

---

**1.** Article 714, V.A.C.C.P. (1925) set out, in part, that a husband and wife "shall in no case testify against each other except in a criminal prosecu- tion for an offense committed by one against the other."

Reports 594–595 (1938) and American Law Institute, Model Code of Evidence, Rule 215 (1942). Professor Wigmore suggested that a spouse's extensive privilege to exclude his or her spouse's adverse testimony should be replaced by a privilege protecting only private marital communications. 8 J. Wigmore, Evidence sec. 2227 (McNaughton rev. 1961). In this context, it is reasonable to interpret the Legislature's 1965 statutory changes as a decision to permit the admission of a spouse's adverse testimony in any case where the evidence indicates that the testifying spouse suffered any grade of assault or violence by the defendant spouse, even in a case where the testifying spouse was not named as a victim in the indictment or information.

*Young v. State,* and its predecessors, represent an occasion where this Court adhered to a doctrinal concept long after the reason supporting it disappeared. It has been written about the privilege against adverse spousal testimony that

"The ancient foundations for so sweeping a privilege have long since disappeared. Nowhere in the common-law world—indeed in any modern society—is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being.

"...

"The contemporary justification for affording an accused such a privilege is also unpersuasive. When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In those circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frus-

trate justice than to fester family peace." *Trammel,* 100 S.Ct. supra, at 913.

I would hold that the trial court properly permitted the appellant's spouse to testify against him concerning his violent and assaultive conduct towards her daughter and herself.[2] This was authorized by the exception to the husband-wife privilege set out in Art. 38.11. I would overrule *Young v. State* and its predecessors. I respectfully dissent.

W.C. DAVIS and McCORMICK, JJ., join this dissent.

---

**2.** I agree with the majority that this Court's recent promulgation of Rule 504 of the new Texas Rules of Criminal Evidence is no justification for affirming the trial court's actions, and should not be used before its effective date for that purpose. The 1965 changes in the statutory privilege justify an affirmance of appellant's conviction. On the other hand, the fact that Rule 504 permits appellant to be retried for this offense with the use of his wife's testimony is no justification for adhering to a dated, and improper, interpretation of Art. 38.11.